IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 09-80507-MARRA |
| | ) |
| TOWN OF LAKE PARK, FLORIDA, and COMMISSIONERS PATRICIA PLASKET-OSTERMAN, JEFF CAREY, ED DALY and KENDALL RUMSEY, in their official capacity as members of the Lake Park Town Commission, and DESCA DUBOIS, in her official capacity as Mayor of Lake Park. | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Plaintiff, the United States of America, files this response in opposition to defendants' motion to dismiss the amended Complaint.

### I. SUMMARY OF CASE AND ARGUMENT

The United States brought this case under Sections 2 and 12(d) of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, and 42 U.S.C. § 1973j(d). The amended complaint alleges, inter alia, that the at-large method of election for Town Commission violates the Voting Rights Act because black citizens, who comprise 38 percent of Lake Park's citizen voting age population, are unable to participate effectively in the electoral system and elect candidates of their choice. Defendants include the Town of Lake Park, and the Commissioners and the Mayor, in their official capacities, who enacted and maintain the local at-large method of election for

Town Commissioners. Defendants do not challenge that the United States failed to allege any necessary element of a Section 2 claim. Instead, they seek to dismiss this action against the Commissioners and Mayor by claiming they are not proper parties. They also seek to dismiss the action (or have it stayed) because they challenge the current relevance of 2000 Census data.

Plaintiff opposes the motion to dismiss because the Commissioners and Mayor are necessary parties who hold the explicit power to maintain an electoral system that violates federal law, or to initiate the adoption of a new system. Next, it is well settled that the 2000 Census data presumptively control this lawsuit. Thus, delaying any remedy to correct the violation of federal law until perhaps 2012 is inconsistent with well-established Section 2 jurisprudence.

When considering a motion to dismiss under Rule 12 (b) (6), a district court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). If an issue "turns on questions of fact [it] cannot be resolved on a motion to dismiss." Pincus v. Law Offices of Erskine & Fleisher, ___ F. Supp. 2d. ___, 2009 WL 1423977 (S.D. Fla. 2009). The motion to dismiss is contrary to established legal authority, and questions of fact nevertheless remain regarding the issues raised in the motion to dismiss.

## II. ARGUMENT

A. The most recent census data are accurate and controlling as a matter of law, and any challenges to census data accuracy are factual questions not properly challenged by a Rule 12 motion.

Defendants seek to dismiss this action under Rule 12(b)(6) because the United States has alleged facts regarding the town's minority population based on 2000 Census data.[1] "Defendants offer that the 2000 U.S. Census is no longer accurate." (Def's. Mot. to Dismiss at 6.) The data are characterized as "stale." Id. at 5.[2]

Courts hearing cases brought under Section 2 of the Voting Rights Act regularly have addressed challenges to the use of census data in the latter years of a decade. Contrary to the Defendants' arguments about using the 2000 Census data for this case, courts uniformly have held that the data from the most recent census are presumptively valid as a matter of law. See League of United Latin Am. Citizens v. Perry, 548 U.S. 399, 405 (2006) (acknowledging "legal fiction" that districting plans remain constitutionally apportioned throughout the decade); Georgia v. Ashcroft, 539 U.S. 461, 489 n.2 (2003) ("examining the benchmark plan with the

---

[1] The 2010 Census data will not be officially available for redistricting purposes until as late as the end of March 2011. (See U.S. Census Bureau, 2010 Census Timeline; Key Dates, http://2010.census.gov/2010census/about_2010_census/013279.html. Last visited June 25, 2009). This would mean, as a practical matter, that neither the United States nor private plaintiffs would be able to bring and prosecute any lawsuits under Section 2 in which vote dilution is alleged during the latter part of a decade. Worse still, final relief probably could not be available to voters until much later, perhaps not until 2012. Delaying a resolution to these important federal law claims for three years would be manifestly unjust and inappropriate.

[2] Population demographics are relevant in this Section 2 case, because "a party asserting § 2 liability must show by a preponderance of the evidence that the minority population in the potential [majority-minority] election district is greater than 50 percent." Bartlett v. Strickland, ___ U.S. ___, 129 S.Ct. 1231, 1246 (2009); Thornburg v. Gingles, 478 U.S. 30, 50 (1986) (minority group must "demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single-member district.")

census numbers in effect at the time the State enacted its plan comports with the one-person, one-vote principle"); Johnson v. Miller, 922 F. Supp. 1556, 1563 (S.D. Ga. 1995) ("In the calculus of district population, our only measure of the state's demographics is the decennial census"), aff'd, Abrams v. Johnson, 521 U.S. 74, 100-101 (1997).  Defendants cite no legal authority to the contrary.

In Johnson v. Desoto County Bd. of Comm'rs, 204 F.3d 1335, 1341 (11th Cir. 2000), the Eleventh Circuit stated, "[t]he presumption is that census figures are continuously accurate.  This presumption is not irrebuttable.  The continuing accuracy of census figures is presumed only until the party challenging the census data overcomes the presumption with competent evidence to the contrary."  Id.  "The census is presumed accurate until proven otherwise." McNeil v. Springfield Park Dist., 851 F.2d 937, 940 (7th Cir. 1988).

Even in a redistricting case heard in the tenth year of a decade, the most recent census data are presumed to be accurate.  Garza v. County of Los Angeles, 918 F.2d 763, 772-73 (9th Cir. 1991).  Garza affirmed a finding that the redistricting plan diluted minority voting strength in Los Angeles County.  Id.  "The Court has never hinted that plaintiffs claiming present Voting Rights Act violations should be required to wait until the next census before they can receive any remedy."  Id.  See also Skorepa v. City of Chula Vista, 723 F. Supp 1384, 1390 (S.D. Cal. 1989) (presuming nine-year-old census data was accurate).

The strong presumption that the most recent census data are accurate is rebuttable. Desoto County Bd. of Comm'rs, 204 F.3d at 1341.  It may be overcome only by "clear and convincing" evidence presented by the defendants.  McNeil v. Springfield Park Dist., 851 F.2d at 946.  See also Meek v. Metro. Dade County, 985 F.3d 1471, 1484-85 (11th Cir. 1993) (probative

value of census data is question of fact). Therefore, a Rule 12 motion is not the appropriate method to challenge the rebuttable presumption of the validity of census data.

In Desoto County Bd. of Comm'rs, defendants sought to rebut the presumption of accuracy of the most recent census by introducing expert testimony about population changes occurring since the census. 204 F.3d at 1339-41. Similarly, the Town of Lake Park may produce population surveys through its own expert to challenge the presumption. E.g., Garza, 918 F.2d at 773; Regensburger v. City of Bowling Green, 278 F.3d 588, 594-95 (6th Cir. 2002) (holding district court free to reject defendant's rebuttal statistics "particularly in light of the fact . . . there was no question to the accuracy of the 1990 Census figures"). If Defendants wish to challenge the evidentiary weight of 2000 Census data, it must be challenged through evidence that shows clearly and convincingly that 2000 Census data no longer are valid for Lake Park.

Other appellate courts have described Section 2 cases as factually complex and emphasized the appropriateness of proceeding to the merits in a Section 2 case, particularly regarding statistical matters. These redistricting cases "generally call for substantial and complex factual determinations . . . Indeed, both Congress and the Court have indicated that Section 2 cases require consideration of the totality of the circumstances." McNeil v. Springfield Park Dist., 851 F.2d at 940; Bradas v. Rapides Parish Jury, 508 F.2d 1109, 1112 (5th Cir. 1975); See also Gingles, 478 U.S. at 30 (resolving Section 2 vote dilution case is "peculiarly dependent upon the facts of each case"). In short, granting a motion to dismiss because the 2000 Census data are "stale" is contrary to Section 2 jurisprudence.

Finally, remedies to electoral practices that potentially violate the Voting Rights Act should not be delayed. Important federal interests, as well as the interests of minority voters,

weigh heavily against maintaining an electoral system that violates federal law any longer than necessary.  United States v. City of Euclid, 580 F. Supp. 2d 584, 586 (N.D. Ohio 2008) (referencing a stay of all elections until a remedial plan could be employed);  United States v. Osceola County, No. 6:05-cv-1053-Orl-31DAB, 2006 U.S. Dist. LEXIS 46605, *2 (M.D. Fla. June 26, 2006) (granting preliminary injunction against holding elections under challenged at-large method of election); United States v. Metro. Dade County, 815 F. Supp. 1475, 1478 (S.D. Fla. 1993) (granting of temporary restraining order to stop immediately a violation of the Voting Rights Act); See also United States v. Berks County, 277 F. Supp. 2d 570, 578 (E.D. Pa. 2003) (ongoing violation of the Voting Rights Act constituted irreparable harm to United States); Dillard v. Crenshaw County, 640 F. Supp. 1347, 1363 (M.D. Ala. 1986) (granting preliminary injunction to stop violation of the Voting Rights Act).

In effect, the Defendants' position urges the Court to suspend Section 2 of the Voting Rights Act for a few years every decade.  In originally enacting Section 2 and in amending Section 2 in 1982, Congress provided for no such suspension of the enforcement of Section 2. Moreover, no case authority supports the judicial suspension of Section 2 enforcement in the years before the release of a new census.  Therefore, Defendants' argument has no merit. Granting Defendants' request to delay a resolution will have the perverse effect of allowing Commissioners to remain in office and exercise powers for years after being elected by a system which may ultimately be found to violate federal law.  During that time, they will enact all manner of policies affecting the Town's citizens, including decisions affecting the black citizens who comprise approximately 38 percent of Lake Park's citizen voting age population.  If the current system of election in Lake Park violates the Voting Rights Act, a remedy should not be

6

delayed. For these reasons, the motion to dismiss should be denied.

B.   The Mayor and Town Commissioners are Proper Parties.

Defendants contend that the Mayor and Commissioners of Lake Park are not proper parties to the suit because they do not have the authority to alter the manner of election. Whether a defendant is properly named under Rule 17 and has the "capacity to be sued is determined by the Law of Florida." Byron v. Univ. of Fla., 403 F. Supp. 49, 54 (D.C. Fla. 1975).

Under Florida law, the Defendant Commissioners and Mayor are proper parties. The United States names them only in their official capacity. Contrary to Defendants' claim that they "lack the legal authority to alter the method of election" (Def's. Mot. to Dismiss at 9), under Florida law, these Defendants have the power to initiate changes to a method of election by amending the municipal charter. By taking no action to change the method of election, they also maintain their current at-large system of election. Neither the county nor the State holds these powers. See 1978 Fla. Op. Atty. Gen. 71 (discussion of constitutional and statutory silence, and statutory provisions, vesting broad powers in municipal commissioners to change the method of election). "The governing body of a municipality may, by ordinance . . . submit to the electors . . . a proposed amendment to its charter." Fla. Stat. Ann. § 166.031(1) (West 2009) (emphasis added). Defendants argue that the voters, through referendum, are the mechanism for any change to an electoral system. Defendants are only partially accurate. Ten percent of registered voters may petition for a charter amendment. Id. The Defendant Commissioners and Mayor, however, have the power to initiate separately the process to change, or maintain through

inaction, the method of election.  Id.[3]

Furthermore, municipal home rule in Florida affords municipalities and towns broad powers to conduct government affairs and to manage municipal elections.[4]  Defendants understate the power they have over elections.  Specifically, home rule gives municipalities all powers "not expressly prohibited by the constitution, general or special law, or county charter."  Fla. Stat. Ann. § 166.021(4) (West 2009).

A municipal election cannot take place in the Town of Lake Park without action by the Defendant Commissioners and Mayor.  They must fix the date and filing period of Commission elections.  For example, Lake Park Town Commission Resolution 02-01-09 set the filing period and date for the March 2009 municipal election.  Next, Lake Park's Town Charter establishes the Commission as running town-wide from numbered posts.  Article IV, Section 1, Code of Ordinances, Town of Lake Park, Florida.  Defendant Commissioners and Mayor also set the terms of office and determine the stagger of the terms for each position.  Article IV, Section 3, Code of Ordinances, Town of Lake Park, Florida.  The Defendant Commissioners and Mayor have ultimate control over the initiation and enactment of ordinances or charter amendments which change the form of elections.[5]

---

[3]     All of the municipal commissioners were named as defendants in another Section 2 case, James v. Sarasota, 611 F. Supp. 25, 27 (M.D. Fla. 1985).  "The defendants are the five members of the city commission."  James, 611 F.Supp. at 27.  The defendant Sarasota commissioners admitted their liability on the "eve of trial."  Id.

[4]     The Municipal Home Rule Powers Act in 1973 established home rule.  Fla. Stat. Ann. ch. 166 (West 2009).

[5]     Florida's vesting of vast home rule powers in municipalities gives Defendants virtually complete authority to conduct municipal elections.  In particular, Fla. Stat. Ann. § 166.021(1) (West 2009) vests municipalities all powers over their affairs "except when expressly prohibited by law."  Florida law expressly requires that this home rule power be interpreted broadly.  See

Moreover, multiple Lake Park ordinances vest a variety of electoral powers in the Defendant Commissioners. The Commissioners and Mayor have the power to amend these ordinances. Some of these provisions are included under Article XVI (Registration and Elections) of the Code of Ordinances. Code of Ordinances, Town of Lake Park, Florida. Article XVI provisions include, inter alia: (a) Section 15, which requires the Town Commission to appoint four inspectors and a clerk to the municipal election board and shifts this responsibility to the Town Clerk if the Commission is delinquent in fulfilling these duties; (b) Section 19, expressly provides the Lake Park Town Commission with the discretion to select the method of election, either machine or paper ballot, in special elections; (c) Section 20, which charges the Lake Park Town Commission with the responsibility of preparing and securing ballot boxes when paper ballots are used; and, (d) Section 23, which requires the Lake Park Town Commission to provide a certain number of voting booths based on registered voter information and further requires the Commission to provide certain features to ensure voter privacy.

Defendants cite Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991), for the proposition that the Commissioners and Mayor are not necessary parties. Busby was an action for damages under 42 U.S.C. § 1983. The Defendants assert that the logic of Busby "equally applies" to a Section 2 case. (Def's. Mot. to Dismiss at 8.) This assertion is legally incorrect for several reasons.

First, Defendants cite no legal authority for the proposition that the proper defendants in cases brought pursuant to 42 U.S.C. § 1983 are identical to the proper defendants in Section 2

---

Fla. Stat. Ann. § 166.021(4) (West 2009). See also Illene S. Lieberman and Harry Morrison, Jr., Warning, Municipal Home Rule In Danger of Expressly Being Preempted by . . . , 18 Nova L. Rev. 1437, 1441 (1994) (discussing history of home rule and statutory framework of broad home rule powers to manage affairs including elections).

cases. Second, the elements of a Section 1983 case, and the defenses available, bear no resemblance to a Section 2 voting rights case. E.g. Busby, 931 F.2d at 772 (discussing qualified immunity and good faith defenses). Under Section 1983, "a plaintiff must establish that the alleged racial discrimination or harassment occurred pursuant to a custom or policy of the municipality." Busby, 931 F.2d at 776. In contrast, the elements and burdens in a Section 2 case are entirely different. See Gingles, 478 U.S. at 50-52.

Third, Section 1983 actions seek monetary damages. If a plaintiff proves that an official acting in an official capacity is liable for money damages, then the defendant government is liable for money damages, not the official. Busby, 931 F.2d at 776. The "functional equival[ence]" between the officials and the municipality the Eleventh Circuit described in Busby was only the functional equivalence for determining liability for monetary damages. That is, if the official were liable in his or her official capacity, the defendant government would ultimately pay. If the same defendant government were found liable, and no official had been named as a defendant, the defendant municipality would still ultimately pay.[6] Hence, there was functional equivalence for damage payments between the officials and the municipality rendering the officials unnecessary parties. All of the cases the Eleventh Circuit relied on in Busby for the proposition cited by Defendants were also cases in which monetary damages were

---

[6]  Compare Busby, 931 F.2d at 772, with Shotz v. City of Plantation, 344 F.3d 1161, 1179-80 (11th Cir. 2003) (distinguishing Busby and finding officials may be sued in an individual capacity based on statutory reasons compared to limits naming officials in different statutory claims). Defendants refer to United States v. City of Euclid, et al., Case No. 1:06-cv-01652 (N.D. Oh.) (Def's. Mot. to Dismiss at 7 n. 2.) Whether or not city commissioners in Ohio were proper parties has no relevance to this motion because Florida law defines the scope of the Defendants' powers and whether they are proper parties, not Ohio law. See Byron, 403 F. Supp. at 54.

sought. In contrast, the United States here seeks only equitable relief concerning the method of election for Town Commissioners, and Busby therefore does not support dismissing the Defendant Commissioners and Mayor.

Defendants further contend that Holley v. City of Roanoke, 162 F. Supp. 2d 1335 (M.D. Ala. 2001), is a Section 2 case that supports dismissing the Commissioners and Mayor. To the contrary, the district court granted a motion to dismiss the Section 2 voting rights claims entirely against every defendant. "Here, there is no electoral process. The Board of Education members . . . are appointed, not elected. Because they are not elected officials, section 2 has no application." Holley, 162 F. Supp. 2d at 1341. Only claims brought under 42 U.S.C. § 1983 survived the motion to dismiss, and thereafter individual officials were dismissed for the same qualified immunity reasons as discussed in Busby.

Finally, the Commissioners and Mayor are necessary parties because they can initiate an amendment to, or preserve through inaction, the election ordinances which are sine qua non of the Section 2 violation. Thus, the United States opposes the motion to dismiss the Defendant Commissioners and Mayor in their official capacity under Rule 17 because they can initiate a cure, but have failed to do so.[7]

C. This Court is vested with broad equitable powers to order relief with regard to a violation of the Voting Rights Act, whether or not it is favored by a majority of the Lake Park voters in a referendum.

The Defendants argue that this case should be dismissed because any change to the

---

[7] The Defendants appear to concede some important factual assumptions relied upon by the United States: A remedy can only occur "if the Town acting through its representative body, the Town Commission, takes action." (Def's. Mot. to Dismiss at 7.) While the Commissioners acting individually can't settle this case, "a majority vote of the Town Commission" could. Id. Compliance with any court order, "could only be carried out by the Town Commission taking action to adopt the necessary ordinances to amend the Town's Charter." Id.

method of election must be submitted to a referendum under state law. (Def's. Mot. to Dismiss at 3; 9-11.) This argument is without merit.

This Court has broad equitable powers with regard to remedying violations of the Voting Rights Act. Specifically, it is well-established in the Eleventh Circuit that district courts are vested with broad equitable powers when ordering relief to correct violations of Section 2. See, e.g., Dillard v. Crenshaw County, 831 F.2d at 248 (citing U.S. v. Paradise, 480 U.S. 149 (1987)). Indeed, the Eleventh Circuit has held that such a judicially devised plan to reapportion districts becomes necessary especially where a Commission lacks the legislative authority to reapportion itself. Tallahassee Branch of NAACP v. Leon County, Fla., 827 F.2d 1436, 1440 (11th Cir. 1987) (applying Wise v. Lipscomb, 437 U.S. 535 (1978)).

This Court has equitable powers to remedy any violation of the Voting Rights Act, whether or not a majority of the voters in Lake Park agree with the remedy. "[W]hen devising election plans to remedy section 2 violations, federal courts 'should exercise . . . traditional equitable powers to fashion the relief so that it completely remedies the prior dilution of minority voting strength and fully provides equal opportunity for minority citizens to participate and to elect candidates of their choice.'" United States v. Dallas County Comm'n, 850 F.2d 1433, 1438 (11th Cir. 1988) (quoting S. Rep. No. 97-417, at 31 (1982), reprinted in 1982 U.S.C.C.A.N 177, 208). The existence of any municipal procedures in conflict with this power, such as a requirement to obtain referendum approval before altering the method of a municipal election, does not in any way support Defendants' motion to dismiss.

## CONCLUSION

For the foregoing reasons Plaintiff respectfully requests that this Court deny Defendants'

Motion to Dismiss.

ERIC H. HOLDER, JR.
Attorney General

LORETTA KING
Acting Assistant Attorney General
Civil Rights Division

JEFFERY H. SLOMAN
Acting United States Attorney
Southern District of Florida
VERONICA HARRELL-JAMES
Assistant United States Attorney

CHRISTOPHER COATES
Chief, Voting Section

 s/ J. Christian Adams
J. CHRISTIAN ADAMS
VERONICA SEUNGWON  JUNG
ERNEST A. MCFARLAND
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
Room 7254-NWB
950 Pennsylvania Avenue
Washington, D.C.  20530
(202) 616-4227 (phone)
(202) 307-3961 (facsimile)

Attorneys for United States of America

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 10th day of July 2009, I electronically filed the foregoing Notice of Opposition to Defendants Motion to Dismiss with the Clerk of Court by using the CM/ECF system, which thereafter would serve a copy by electronic mail upon:

Attorneys for Defendants

Michael Grogan
Allen Norton & Blue, P.A.
800 West Monroe Street
Jacksonville, FL 32202
Phone: 904-562-4480
Facsimile: 904-562-4499
Email: mgrogan@anblaw.com

Thomas Baird
11891 U.S. Highway 1
Suite 105
North Palm Beach, Florida 33408
Phone: 561-625-4400
Email: tbaird@tjbairdlaw.com

      This Certificate was executed on July 10, 2009 at Washington, D.C.

                                                     s/ J. Christian Adams
                                                   J. Christian Adams
                                                   United States Department of Justice
                                                 Civil Rights Division, Voting Section
                                                 Room 7268-NWB
                                                 950 Pennsylvania Avenue, NW
                                                 Washington, DC 20530
                                                 (202) 616-4227(phone)
                                                 (202) 307-3961 (facsimile)