UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80507-CIV-MARRA/JOHNSON

THE UNITED STATES OF AMERICA,

    Plaintiff,

vs.

TOWN OF LAKE PARK, FLORIDA, and
COMMISSIONERS PATRICIA PLASKET-
OSTERMAN, JEFF CAREY, ED DALY and
KENDALL RUMSEY, in their official
capacity as members of the Lake Park Town
Commission, and DESCA DUBOIS, in her
official capacity as Mayor of Lake Park,

    Defendant.
_____/

## ORDER AND OPINION ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants, TOWN OF LAKE PARK, FLORIDA, and COMMISSIONERS PATRICIA PLASKET-OSTERMAN, JEFF CAREY, ED DALY and KENDALL RUMSEY, in their official capacity as members of the Lake Park Town Commission, and DESCA DUBOIS, in her official capacity as Mayor of Lake Park, (collectively, "Defendants") Motion to Dismiss Amended Complaint (DE 28). Plaintiff THE UNITED STATES OF AMERICA ("Plaintiff" or "United States") filed a response to the motion (DE 29). Defendants failed to file a reply and the deadline to do so has passed. The Court has carefully reviewed the motion and the response, and is otherwise fully advised in the premises.

**Background**

On March 31, 2009, the United States filed a Complaint against Defendants, which was replaced on June 10, 2009 by an Amended Complaint. The United States brought this case under

Sections 2 and 12(d) of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, and 42 U.S.C. § 1973j(d).  The Amended Complaint alleges that the at-large method of election for Town Commission violates the Voting Rights Act because black citizens, who comprise thirty-eight percent (38%) of Lake Park's citizen voting age population, are unable to participate effectively in the electoral system and elect candidates of their choice.  Defendants include the Town of Lake Park and its Commissioners and Mayor in their official capacities, who allegedly enacted and maintain the local at-large method of election for Town Commissioners.  The facts, as alleged in the Amended Complaint and for purposes of this motion must be accepted as true, are as follows:

Defendant Town of Lake Park (the "Town") is a political and geographical subdivision of the State of Florida.  Comp. ¶ 3.  The Commission for the Town of Lake Park (the "Commission"), the body established under the laws of the State of Florida and Article IV of the Charter for the Town, is composed of four members who are elected at-large to three-year staggered terms.  Comp. ¶ 4, 6.  Defendants Patricia Plasket-Osterman, Jeff Carey, Ed Daly and Kendall Rumsey are elected members of the Commission.  Comp. ¶ 4. Defendant Desca Dubois, Mayor of Lake Park, serves as a fifth voting member of the Commission in legislative matters. Comp. ¶ 4, 6.

According to the 2000 Census, the Town has a total population of 8,721 of whom 4,256 (48%) are black.  Comp. ¶ 5.  The percentage of black citizens who are of voting age is thirty-eight percent, while white voting age citizens comprise a fifty-three percent majority. Id. Black persons in Lake Park and throughout Palm Beach County have suffered from a history of official discrimination.  Comp. ¶ 9.  Lake Park has engaged in a variety of official discrimination

against blacks including, but not limited to, racially discriminatory code enforcement policies, zoning decisions and ordinances, actions by the Lake Park Police Department to prevent blacks from entering the Town after sundown, and threats to exercise eminent domain powers with a racially discriminatory purpose. Id.

Significant socioeconomic disparities exist between white and black residents of the Town. Comp. ¶ 10. Such disparities have the effect of limiting black participation in the Town's at-large elections. Id. Lake Park elections are characterized by the use of practices and procedures that impair black electoral success. Comp. ¶ 11. These include, but are not limited to, staggered terms, a majority vote requirement and placement of polling locations outside of minority-communities. Id. Other features in the Town, such as gated communities, further impair the ability of black candidates to campaign and be elected. Id. Slating by various residential condominium associations occurs in Lake Park, and black candidates for the Lake Park Town Commission are not given access to this slating process. Comp. ¶ 12.

Racially polarized voting patterns prevail in elections in the Town. Comp. ¶ 7 Political campaigns in the Town have been characterized by subtle and overt racial appeals. Comp. ¶ 13. No black candidate for the Commission has ever won an election since Lake Park was incorporated in 1923. Id. No black candidate ever has been elected to a seat on the Commission. Comp. ¶ 14. Black voters voting for the Commission are politically cohesive. Comp. ¶ 7. White bloc voting usually results in the defeat of candidates who are preferred by black voters. Id. White voters have consistently voted as a bloc so as to defeat every black candidate. Id.

The black population of the Town is sufficiently numerous and geographically compact that a properly apportioned single-member district plan for electing the Defendant Commission

can be drawn in which black persons would constitute a majority of the total population, voting age population, and citizen voting age population in at least one district. Comp. ¶ 8.

Plaintiff alleges in its amended complaint that, under the totality of the circumstances, the at-large method of electing the Commission has the effect of diluting black voting strength, resulting in black citizens being denied an opportunity equal to that afforded to other members of the electorate to participate in the political process and to elect representatives of their choice, in violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973.  Plaintiff argues that, unless enjoined by order of this Court, Defendants will continue to conduct elections for the Commission under the present method of election that denies black citizens the opportunity to participate equally with white citizens in the political process and to elect candidates of their choice, in violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973.

Defendants argue in their motion to dismiss that the action should be dismissed or stayed until after the 2010 U.S. Census data is released because the suit is based on the 2000 Census data, which they claim are not as relevant as the 2010 Census data will be. (Mot. at 5-7). Defendants also argue that the individual named Commissioners and Mayor, who are named in the suit in their official capacities, should be dismissed from the suit as duplicative and unnecessary. (Mot. at 7-11).

**Standard of Review**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff.  See Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007).  To satisfy the pleading requirements of Federal Rule of Civil Procedure 8, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair

notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citing Fed. R. Civ. P. 8); see also Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007); Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001). Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Id. (internal citation and quotation omitted). "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." Sams v. United Food and Comm'l Workers Int'l Union, 866 F.2d 1380, 1384 (11th Cir. 1989).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1964-65 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 1965. Plaintiff must plead enough facts to state a plausible basis for the claim. Id.

**Discussion**

First, Defendants argue that the action should be dismissed or stayed until after the 2010 U.S. Census data is released. Because the suit is based on the 2000 Census data, Defendants claim the 2000 Census data are not as relevant as the 2010 Census data will be. (Mot. at 5-7).

Defendants cite no authority to support their proposition that Census data are no longer accurate during the latter part of the decade.  Moreover, case law under Section 2 of the Voting Rights Act holds that data from the most recent census are presumptively valid as a matter of law, even though populations change over time. See, e.g., League of United Latin American Citizens v. Perry, 548 U.S. 399, 405 (2006) (acknowledging "legal fiction" that districting plans are constitutionally apportioned throughout a decade); Georgia v. Ashcroft, 539 U.S. 461 at 489 n. 2 ("[B]efore the new census, States operate under the legal fiction that even 10 years later, the plans are constitutionally apportioned."); People ex rel Salazar v. Davidson, 79 P.3d 1221, 1233 (Colo. 2003) ("When evaluating constitutionality under the one-person, one-vote doctrine, a court uses the national decennial census figures. The United States Supreme Court has recognized the legal fiction that these figures remain accurate for the entire ten years between censuses.").

As the court explained in Johnson v. Miller:

> In the calculus of district population deviation, our only measure of the state's demographics is the decennial census. Since the population is not static, we adhered to the fiction that the census block figures are accurate to the exclusion of all others.

922 F.Supp. 1556, 1563 (S.D. Ga. 1995) (three-judge court), aff'd, Abrams v. Johnson, 521 U.S. 74 (1997).  See also Garza v. County of Los Angeles, 918 F.2d 763, 772-73 (9th Cir. 1990) ("The Court has never hinted that plaintiffs claiming present Voting Rights Act violations should be required to wait until the next census before they can receive any remedy.")

The strong presumption that the most recent census data are accurate is rebuttable.  As the Eleventh Circuit stated in Johnson v. DeSoto County Bd. of Com'rs, 204 F.3d 1335, 1341 (11th Cir. 2000)  "[t]he presumption is that census figures are continually accurate. But this

presumption is not irrebuttable.  The continuing accuracy of census figures is presumed only until the party challenging the census data overcomes the presumption with competent evidence to the contrary."(citations omitted).  That presumption may only be overcome by defendants' presentation of "clear and convincing" evidence. See McNeil v. Springfield Park Dist., 851 F.2d 937, 946 (7th Cir. 1988) ("Proof of changed figures must be clear and convincing to override the presumption.").

Based on the foregoing, the Court concludes that Defendants' argument that the 2000 Census is stale is an improper basis for a motion to dismiss under Fed. R. Civ. P.12(b)(6).  The appropriate method to challenge the rebuttable presumption of the evidentiary validity of the 2000 Census data is through a presentation of "competent evidence to the contrary," see Johnson, 204 F.3d at 1341, either at the summary judgment or trial stage of the litigation.

Second, Defendants argue that the individual named Commissioners and Mayor, who are named in the suit only in their official capacities, should be dismissed from the suit as duplicative and unnecessary. (Mot. at 7-11).[1]  A defendant's capacity to be sued under Rule 17, Fed. R. Civ. P., is determined by the Florida law. Byron v. University of Florida, 403 F.Supp. 49, 54 (N.D. Fla. 1975).

While Defendants are correct that a voter referendum is necessary to change either the terms of elected officers or the manner of their election, see § 166.021(4), Fla. Stat., Defendants

---

[1]Defendants rely primarily on cases brought under 42 U.S.C. § 1983, which the Court finds are not instructive in this matter.  The elements, defenses, and remedies available in § 1983 cases bear no resemblance to a Section 2 voting rights case.  Additionally, the only Section 2 opinion relied on by Defendants, Holley v. City of Roanoke, Alabama, 162 F.Supp.2d 1335 (M.D. Ala. 2001) is inapposite to this analysis because the section 2 claims were dismissed against every defendant because the Board of Education members in that case were appointed, not elected, and section 2 had no application. See id. at 1341.

are only partially accurate. Defendants ignore the fact that the Commissioners and Mayor have the power to initiate the process to change, or maintain through inaction, the Town's current at-large method of election. See § 166.031(1) ("The governing body of a municipality may, by ordinance. . . submit to the electors of said municipality a proposed amendment to its charter."). Accordingly, the Court finds that Defendants are properly named as parties in their official capacity in this case. See also James v. City of Sarasota, Fla., 611 F.Supp. 25 (M.D. Fla. 1985) (In a Section 2 case to challenge the method by which the city commissioners are elected, "[t]he defendants are the five members of the city commission.").

**Conclusion**

For the reasons stated herein, Defendants' Motion to Dismiss Amended Complaint (DE 28) is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 23rd day of October, 2009.

```
                                   _____
                                   KENNETH A. MARRA
                                   United States District Judge
```

copies to:
All counsel of record